UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TONI ANN D'AGOSTINO,

                Plaintiff,

-against-

CAROLYN W. COLVIN,
*Acting Commissioner of Social Security*,

                Defendant.
----------------------------------------------------------------X

**APPEARANCES:**

    John W. DeHaan
    The DeHaan Law Fim P.C.
    300 Rabro Drive East, Suite 101
    Hauppauge, New York 11788
        *Attorney for Plaintiff*

    Dara A. Olds
    United States Attorney's Office
    Eastern District of New York
    271 Cadman Plaza East
    Brooklyn, New York 11201
        *Attorney for Defendant*

For Online Publication Only

**MEMORANDUM & ORDER**
16-CV-5600 (JMA)

FILED
CLERK
8/1/2018 1:04 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

    Plaintiff Toni Ann D'Agostino challenges the decision of the Acting Commissioner of Social Security, who concluded, after a hearing before an Administrative Law Judge, that plaintiff is not disabled for purposes of receiving disability insurance benefits under Title II of the Social Security Act. The case is before the Court on the parties' cross-motions for judgment on the pleadings. For the reasons discussed herein, plaintiff's motion for judgment on the pleadings is GRANTED, the Commissioner's cross-motion for judgment on the pleadings is DENIED, and the case is REMANDED for proceedings consistent with this opinion.

1

## I. BACKGROUND

### A. <u>Procedural History</u>

On May 7, 2013, plaintiff filed for disability insurance benefits with the Social Security Administration ("SSA"). (Administrative Transcript ("Tr.") 164.) Plaintiff alleged disability beginning on July 20, 2011, due to impairments affecting her left ankle, back, neck, and hips. (Tr. 164, 175.) The SSA initially denied plaintiff's application on September 5, 2013. (Tr. 60-70.) On September 12, 2013, plaintiff filed a timely request for a hearing. (Tr. 107.) Plaintiff appeared, along with counsel and vocational expert Rocco Meola, before Administrative Law Judge April M. Wexler (the "ALJ") on December 29, 2014. (Tr. 30-58.) In a decision dated February 17, 2015, the ALJ found that although plaintiff had severe impairments of "cervical and lumbar spine strains/sprains," she was not disabled because she still retained the residual functional capacity ("RFC") to perform "sedentary work, defined in 20 CFR 404.1567(a), as requiring sitting for approximately six hours and standing or walking for approximately two hours in an eight-hour day with normal breaks" and that she could "occasionally lift[] 10 pounds, … occasionally climb ramps and stairs but never climb ropes, ladders or scaffolds; occasionally balance and stoop but never kneel, crouch or crawl; push/pull without limitation but never reach overhead" and "is limited to simple, routine, repetitive tasks." (Tr. 10-25.)

Plaintiff filed a timely request for review before the Appeals Council on July 10, 2015. (Tr. 229-33.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 9, 2016. (Tr. 1-4.) This appeal followed.

**B. Factual Background**

In light of the Court's decision to remand this case for further proceedings, the Court recounts only the medical evidence relevant to that determination.

At the December 2014 hearing, plaintiff testified that prior to the onset of her alleged disability, she worked for Kurt Weiss Horticulture Plant Services setting up their garden table displays. (Tr. 34-36.) She stated that she would lift up to 80 pounds with a helper and 40 to 50 pounds by herself. (Tr. 35-36.) On July 20, 2011, plaintiff's alleged onset date, plaintiff was injured while working at Kurt Weiss, when an 80-pound object fell on her. (Tr. 273, 283.) Plaintiff testified that in 2012, after her alleged onset date, she also worked at Bonnie Plants for two weeks, however, only as a driver. (Tr. 36.) She indicated that she stopped working because the company didn't need her anymore, but that she could have kept driving. (Tr. 37.) In the ALJ's summary of the hearing testimony, the ALJ appeared to confuse plaintiff's prior past relevant work description and her two-week work attempt after her alleged disability onset date, finding that:

> After the alleged onset date, [plaintiff] worked briefly in March-April 2012 for a plant service that delivers plants to Home Depot, which involved driving a truck and setting up table displays with plants in the garden area. *She had to push/pull 80 plus pounds with a helper; push 50-pound carts around and had to lift/carry, push/pull 40-50 pounds on her own.* After two weeks, she was let go; however, the claimant stated that she could have continued working but was let go because they did not need her help any longer.

(Tr. 17) (emphasis added). The ALJ referenced this incorrect summary of plaintiff's post-onset work twice in the decision. As discussed below, the ALJ found that the opinion of Dr. Robert Hecht was contradicted by this testimony, affording it little weight. (Tr. 22.) The ALJ also referenced this testimony as supporting her RFC assessment. (Tr. 23.) In both instances, the ALJ referred to plaintiff's post-onset work as requiring the duties of her pre-onset work. (Tr. 22-23.)

In weighing the medical opinions at step two of the sequential analysis and in finding there was no evidence of a severe mental impairment, the ALJ gave "great weight" to Dr. Kathleen Acer, Ph.D., who performed a consultative psychiatric examination on plaintiff for the SSA and who opined that plaintiff did not have significant mental limitations. (Tr.15-16, 312-15.) The ALJ also afforded "some weight" to the opinion of H. Rozelman, Ph.D., a non-examining State Agency psychological consultant, who also reported no significant limitation of plaintiff's mental functioning. (Tr. 16, 65.)

In weighing the medical opinions in making her RFC determination, the ALJ gave "great weight" to the opinion of Dr. Chaim Shtock, a consultative orthopedist who performed a one-time orthopedic examination for the SSA on July 10, 2013, and who opined that plaintiff had "moderate limitations" with regard to heavy lifting, squatting, crouching, frequent stair climbing, walking long distances, standing long periods, sitting long periods and frequent bending and had no limitations in performing overhead activities using both arms or using her hands for fine and gross motor activity. (Tr. 19, 307-10.) The ALJ reasoned that Dr. Shtock's opinion was entitled to "great weight" as it was based upon a complete and through physical examination. (Tr. 19.)

The ALJ also gave "some weight" to the opinion of Dr. Salvatore Inserra, plaintiff's orthopedic surgeon. (Tr. 20.) Plaintiff saw Dr. Inserra four times between August 25, 2011, and November 22, 2011. (Tr. 378-84.) Dr. Inserra noted a previous back injury and complaints of pain in plaintiff's lower back, buttocks, thigh, left hip, and left ankle. (Tr. 380, 381.) He noted mild range of motion ("ROM") restrictions to the lumbar spine, left hip, and left ankle, with tenderness in the posterolateral at the bursa and gluteus insertion site and swelling of the ankle. (Tr. 379, 380, 382.) On August September 22, 2011, Dr. Inserra diagnosed plaintiff with degenerative joint disease with pain to the left thigh, mild radiculitis, contusion of the left hip with

4

bursitis and tendinitis, and left ankle sprain with residual capsulitis. (Tr. 380.) On October 11, 2011, he again noted plaintiff's diagnosis of degenerative joint disease of the lumbosacral spine with pain referred to the thighs; spondylosis and bulging discs L3-L4 and L4-L5; resolved contusions; cystic ganglion lesion at the peroneal tendon area; and possible injury to the posterior tibial tendon at the navicular. (Tr. 379.)

Dr. Inserra indicated in Doctor's Progress Reports to the Worker's Compensation Board dated October 13, 2011 and December 2, 2011, that plaintiff was 100% totally disabled. (Tr. 362-67.) The ALJ gave this opinion "some weight" because the "opinion of 'total' or '100%' disability within the context of a Worker's Compensation claim pertained only to the claimant's former work." (Tr. 20.)

The ALJ gave "little weight" to the opinion of Dr. Brett Silverman, plaintiff's treating physician, who examined and treated plaintiff on numerous occasions over nearly a three-year period from January 6, 2012 through November 21, 2014. (Tr. 252-82, 395-417.) Dr. Silverman consistently reported tenderness in the cervical and lumbar muscles and spasms of the trapezius, thoracic spine and cervical paraspinal muscles. (Id.) He also noted consistent reports of neck, back, hip and left ankle pain by plaintiff as well as restricted left ankle, cervical and lumbar ROM. (Id.) On February 10, 2012, Dr. Silverman reviewed plaintiff's MRI, noting disc bulging at L3-L4, as well as scoliosis, and herniations at C5-C6 and C6-C7, and a bulge at C3-C4. (Tr. 255.) On September 28, 2012, he diagnosed plaintiff with a work-related injury with cervical disc herniation; lumbar disc degeneration with an L4-5 disc herniation; and left ankle pain. (Tr. 260.) Dr. Silverman also prescribed physical therapy, the muscle relaxant Methocarbamol, along with an anti-inflammatory, Naproxen to plaintiff and administered plaintiff with Depo-Medrol and lidocaine injections. (Tr. 402, 412-14, 417.)

5

Dr. Silverman also reported in several narrative reports, including those concerning examinations dated January 6, 2012, April 27, 2012, May 11, 2012, August 21, 2012, and January 24, 2013 that plaintiff was "disabled". (Tr. 252-59.) The ALJ gave this portion of Dr. Silverman's opinion "little weight" as "no clinical findings or specific functional limitations were offered to support the opinion of total disability" and that it was an opinion on "an issue reserved to the Commissioner of Social Security." (Tr. 18.) Dr. Silverman also indicated in a Doctor's Progress Report to the Worker's Compensation Board, dated January 29, 2013, that plaintiff was 100% totally disabled. (Tr. 18, 248-49.) The ALJ gave this opinion "little weight" for the same reasons discussed above. (Tr. 18.)

The ALJ gave "little weight" to the opinion of Dr. Robert Hecht, a pain management and rehabilitation physician treating out of the same practice as Dr. Silverman. (Tr. 21-22, 422-30.) Plaintiff saw Dr. Hecht once for an examination on December 15, 2014, after which Dr. Hecht completed a narrative report and Medical Source Statement in which he opined that plaintiff had been unable to work since July 20, 2011. (Tr. 422-30.) In his narrative report, Dr. Hecht recorded the findings of his physical examination and reiterated the findings of plaintiff's multiple MRI exams. (Tr. 422-24.) Dr. Hecht reported that plaintiff had undergone trigger point injections in the past, had tried a year of physical therapy, and that used a muscle relaxant and a Lidoderm patch. (Tr. 422.)

In his Medical Source Statement, Dr. Hecht opined that plaintiff would be able to occasionally lift and carry less than 10 pounds. (Tr. 425.) He further opined that she would be able to sit, stand, or walk for less than one hour at a time, and that she could sit for up to four hours, stand for up to one hour, and walk for up to one hour during an eight-hour workday. (Tr. 426.) He opined that plaintiff did not require a cane to ambulate and that she could never reach overhead,

6

push, or pull, could perform other reaching occasionally, and could frequently handle, finger, and feel.  (Tr. 426-27.)  He found that plaintiff could occasionally operate foot controls and occasionally climb stairs and ramps, stoop, kneel, or crouch, but could never climb ladders or scaffolds, balance, or crawl.  (Tr. 427.)  Dr. Hecht further opined that plaintiff could never tolerate unprotected heights or moving mechanical parts, but could occasionally tolerate operating a motor vehicle, humidity and wetness, extreme cold, extreme heat, and vibrations, and frequently tolerate dust, odors, fumes, and pulmonary irritants.  (Tr. 428.)  Dr. Hecht also found that plaintiff could perform activities like shopping, traveling without a companion for assistance, ambulating without using a wheelchair, two cranes, or two crutches, using standard public transportation, climbing a few stairs at a reasonable pace without the use of a handrail, preparing a simple meal and feeding herself, and caring for her personal hygiene.  (Tr. 429.)  He opined that plaintiff would not be able to walk a block at a reasonable pace on rough or uneven surfaces.  (Tr. 429.)

The ALJ gave "little weight" to the opinion of Dr. Hecht and found that it was contradicted by other substantial evidence in the record, including the opinion of Dr. Shtock, the "not so significant findings" of Dr. Inserra and Dr. Silverman, and as mentioned above, by the ALJ's mischaracterization of plaintiff's testimony concerning her post-onset work, namely, that plaintiff could have continued work for "a job that required pushing/pulling up to 80 pounds with a helper; pushing carts weighing 50 pounds and lifting/carrying, pushing/pulling 40-50 pounds by herself."  (Tr. 22.)  The ALJ also reasoned that Dr. Hecht had only examined the plaintiff once, and that his opinions regarding plaintiff's ability to complete daily activities were internally inconsistent with the other limitations contained in his report.  (Tr. 21-22.)  In addition, the ALJ found there was "no medical support" for Dr. Hecht's statement that plaintiff was unable to walk a block at a reasonable pace on rough or uneven surfaces, as plaintiff testified that she walks around her house

7

and walks a block outside the house 2-3 times a week and as Dr. Silverman reported plaintiff likes to walk for exercise. (Tr. 21.)

In the instant appeal, plaintiff argues that the ALJ erred by mistakenly finding that plaintiff testified that she could continue to perform her pre-onset work. (Plaintiff's Memorandum of Law in Support of Her Motion for Judgment on the Pleadings ("Pl.'s Mem."), ECF No. 14, at 14.) Plaintiff also argues that the ALJ erred by failing to follow the treating physician rule by giving Dr. Hecht's opinion "little weight." (Pl.'s Mem. at 17-23.) Plaintiff further argues that to the extent the ALJ criticized Dr. Silverman's assessment as being vague or not specific, the ALJ had an obligation to ask Dr. Silverman, plaintiff's treating physician, for a more specific statement before rejecting his opinion. (Pl.'s Mem. at 18.) Plaintiff additionally argues that the ALJ's RFC assessment was not supported by substantial evidence. (Pl.'s Mem. at 24-5.)

## II. DISCUSSION

### C. Standard of Review

A district court may set aside the Commissioner's determination that a plaintiff is not disabled "only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). The district court does not determine *de novo* whether plaintiff is

8

disabled. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004). Rather, to the extent any findings are supported by substantial evidence, they "shall be conclusive." 42 U.S.C. § 405(g); see also Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). However, when an ALJ overlooks an important piece of evidence, remand may be appropriate to ensure the ALJ properly considered such evidence. See Carnevale v. Gardner, 393 F.2d 889, 890–91 (2d Cir. 1968); Hanes v. Comm'r of Soc. Sec., No. 11-CV-1991, 2012 WL 4060759, at *13 (E.D.N.Y. Sept. 14, 2012) (remanding because the ALJ's factual inaccuracies "suggest[ed] a potential misunderstanding of the record").

### D. Legal Standards

#### 1. Social Security Disability Standard

Under the SSA, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). For a person to be under a disability, the impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration established a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. § 404.1520. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). The claimant bears the burden on the first

four steps, but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

### 2. Treating Physician Rule

An ALJ's decisions regarding the weight to be accorded to each medical opinion in the record and how to reconcile conflicting medical opinions is governed by the treating physician rule. 20 C.F.R. § 404.1527(c).[1]

According to the treating physician rule, if a treating physician's opinion regarding the nature and severity of an individual's impairments is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ will credit that opinion with "controlling weight." 20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). The treating physician rule gives "deference to the opinions of treating physicians based on the view that opinions based on a patient-physician relationship are more reliable than opinions based, say, solely on an examination for purposes of the disability proceedings themselves." Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993).

If a treating physician's opinion is not given controlling weight, the ALJ must consider various factors in determining how much weight to give the opinion, including:

(i) the frequency of examination and the length, nature and extent of the treatment relationship;

(ii) the evidence in support of the physician's opinion, including any medical signs, laboratory findings, and supporting explanations provided by the physician;

---

[1] In 2017, new SSA regulations came into effect. The newest regulations apply only to claims filed with the SSA on or after March 27, 2017. Accordingly, because plaintiff's claim was filed in 2013, the Court applies the regulations that were in effect at the time of filing. See, e.g., Ogirri v. Berryhill., No. 16-CV-9143, 2018 WL 1115221, at *6 n.7 (S.D.N.Y. Feb. 28, 2018) (noting 2017 amendments to regulations but reviewing ALJ's decision under prior versions); Rousey v. Comm'r of Social Sec., No. 16–CV–9500, 2018 WL 377364, at *8 n.8 & *12 n.10 (S.D.N.Y. Jan. 11, 2018) (same).

(iii) the consistency of the opinion with the record as a whole;

(iv) whether the opinion is from a specialist; and

(v) any other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

See 20 C.F.R. § 404.1527(c); Halloran, 362 F.3d at 32. An ALJ is required to give "good reasons" in support of her determination on the weight given to a treating physician's opinion, and the failure to provide "good reasons" for not crediting the opinion is grounds for remand. See Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998).

### 3. RFC Determination

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No. 15-CV-6308 (MKB), 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (stating that an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)).

In determining a claimant's RFC, "[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)).

An RFC determination must be affirmed on appeal when it is supported by substantial evidence in the record. Barry, 606 F. App'x. at 622 n.1. However, "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not

11

adopted." Martinez v. Astrue, No. 06–CV–6219, 2010 WL 331694, at *9 (S.D.N.Y. Jan. 28, 2010) (citing Social Security Ruling 96–8p, 1996 WL 374184, at *6 (S.S.A. July 2, 1996)).

### 4. Duty to Develop the Record

The ALJ has a threshold duty to adequately develop the record before deciding the appropriate weight to afford to a treating physician's opinion. Nusraty v. Colvin, 213 F. Supp. 3d 425, 441 (E.D.N.Y. 2016) (citing Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008)). "[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." Burgess, 537 F.3d at 129. See Collins v. Comm'r of Soc. Sec., No. 11-CV-5023, 2013 WL 1193067, at *9–10 (E.D.N.Y. March 22, 2013) (remanding for failure to develop the record). "This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination, and exists even when ... the claimant is represented by counsel." Avila v. Astrue, 933 F.Supp.2d 640, 653-54 (S.D.N.Y. 2013) (quoting Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)).

### E. Analysis

As explained further below, the Court determines that remand is required for the ALJ to develop the record and seek to obtain a medical opinion from Dr. Silverman, plaintiff's treating physician. Remand is also appropriate for the ALJ to make further findings as to plaintiff's testimony concerning her post-onset work, plaintiff's alleged ankle impairment, the weighing of the medical opinions and her RFC determination.

### 1. The ALJ's Duty to Develop the Record

As previously mentioned, Dr. Silverman, plaintiff's treating physician, saw plaintiff numerous occasions over a nearly three-year period. (Tr. 252-82, 395-417.) Dr. Silverman was responsible for examining plaintiff, providing medication for plaintiff's pain, and referring her for

MRI, pain management, neurologist, and physical therapy appointments, among other things. (Tr. Id.) However, Dr. Hecht, a physician in the same practice, examined plaintiff on one occasion and completed plaintiff's Medical Source Statement. (Tr. 422-30.) At the hearing the ALJ acknowledged but did not question the fact that a different physician at the practice of plaintiff's treating physician had completed the Medical Source Statement:

> ATTY: At these practices, for some reason, the treating doctors aren't filling out the medical source statements –
> ALJ: Yeah.
> ATTY: –and they're issuing it to someone in the practice as well.
> ALJ: Right. Ok.

(Tr. 40.) The ALJ ultimately gave "little weight" to the opinion of Dr. Hecht, in part because he had only examined the plaintiff on one occasion. (Tr. 21-22.) Also, as noted above, the ALJ gave "little weight" to the opinion of Dr. Silverman that plaintiff was "disabled" as it was on "an issue reserved to the Commissioner of Social Security," and because "no clinical findings or specific functional limitations were offered to support the opinion of total disability." (Tr. 18.) The ALJ further noted that Dr. Silverman's findings were "not so significant," but did not explain how or why this was the case. (Tr. 22.)

Defendant argues that the ALJ was not required to ask Dr. Silverman for a more specific assessment before rejecting his opinion. (Defendant's Memorandum of Law in Support of Her Motion for Judgment on the Pleadings ("Def.'s Mem."), ECF No. 16, at 23.) However, given the record in this case, which contains inconsistent medical opinions, the ALJ's primary reliance on the vague opinion of a consultative examiner, which is generally entitled to less weight, and the fact that the absence of a detailed functional assessment was one of the bases for the ALJ discounting Dr. Silverman's opinion, the ALJ erred in not following up with Dr. Silverman and seeking to obtain a more detailed opinion concerning plaintiff's functional limitations before

13

relying primarily on the evaluation of a consultative physician who did not treat the plaintiff. See Sanchez v. Colvin, No. 13-CV-6303, 2015 WL 736102, at *6 (S.D.N.Y. Feb. 20, 2015) (holding that the ALJ committed legal error in relying upon the vague assessments of a consulting psychologist rather than demanding an assessment from the plaintiff's treating psychiatrist); Moreira v. Colvin, No. 13-CV-4850, 2014 WL 4634296, at *6-7 (S.D.N.Y. Sept. 15, 2014) (remanding where the ALJ failed to seek additional information from a treating physician who had determined the plaintiff to be unemployable and instead relied on the evaluation of a consultative physician).

On remand, the ALJ should further develop the record and should seek a more detailed opinion concerning plaintiff's functional limitations from Dr. Silverman, and if appropriate, reconsider plaintiff's RFC determination.

**2. The ALJ's Mischaracterization of Plaintiff's Post-Onset Work Testimony**

As discussed above, the ALJ used her mischaracterization of plaintiff's post-onset work testimony that plaintiff could "push/pull 80 plus pounds with a helper; push 50-pound carts around and had to lift/carry, push/pull 40-50 pounds on her own," (Tr. 17), to support her RFC determination and to discredit in part Dr. Hecht's opinion. (Tr. 22-23.) There appears to be no dispute that the ALJ mischaracterized plaintiff's testimony, and that plaintiff testified that she only drove for two weeks during her post-onset employment attempt. (See Tr. 36-37; Def.'s Mem. at 19-20.) Defendant argues, however, that the ALJ's error concerning plaintiff's testimony was harmless, in part citing plaintiff's Work History Report dated June 11, 2013, which indicates that her post-onset work involved sitting for four hours, walking for three hours, and standing for three hours; stooping, kneeling, crouching, crawling and handling big objects for three hours; and required her to frequently lift 10 pounds. (Def.'s Mem. at 20-21; Tr. 194-95.)   Defendant also

14

argues that the ALJ could have relied on plaintiff's testimony that she felt that she could have continued working as a driver at Bonnie Plants, which defendant argues would have supported the ALJ's RFC finding. (Def.'s Mem. at 20; Tr. 16, 24.) The ALJ, however does not address the June 2013 Work History Report in her decision nor, as mentioned above, does she consider plaintiff's testimony that she believed she could have continued to work as a driver in making her RFC determination. The Court finds that the ALJ should have considered plaintiff's actual testimony concerning her post-onset work attempt for Bonnie Plants, instead of the description of her pre-onset employment, in making the RFC determination.

On remand, the ALJ should make new findings as to plaintiff's post-onset work attempt and if appropriate, reconsider plaintiff's RFC determination.

### 3. The ALJ's Weighing of Dr. Hecht's Opinion

As previously mentioned, the ALJ afforded Dr. Hecht's opinion "little weight." (Tr. 212-22.) The ALJ erred when she determined that Dr. Hecht's opinion was contradicted by the ALJ's mischaracterization of plaintiff's testimony concerning her post-onset work, that she could have continued work for "a job that required pushing/pulling up to 80 pounds with a helper; pushing carts weighing 50 pounds and lifting/carrying, pushing/pulling 40-50 pounds by herself." (Tr. 22.) Upon remand, after correcting his finding as to plaintiff's testimony, the ALJ should reassess whether or not plaintiff's testimony contradicts Dr. Hecht's assessment.

Additionally, the ALJ found, in part, that Dr. Hecht's Medical Source Statement was "inconsistent with his statements regarding the daily activities that the claimant can perform," referring to the portion of Dr. Hecht's opinion wherein he opined that plaintiff was capable of shopping; traveling without a companion; ambulating without using a wheelchair, walker, or two canes or two crutches; using standard public transportation; climbing a few steps at a reasonable

15

pace without the use of a handrail; preparing simple food and feed herself; and caring for her personal hygiene. (Tr. 429.) The ALJ failed to point to which limitations opined by Dr. Hecht were inconsistent with these activities. Upon remand, the ALJ should elaborate on which limitations were not consistent with the performance of these activities.

The ALJ also reasoned that Dr. Hecht's Medical Source Statement was "contradicted by other substantial evidence in the record including the opinion of Dr. Shtock . . . [and] by the not so significant findings reported by Dr. Inserra and Dr. Silverman on their examinations." (Tr. 22.) However, the ALJ does not identify what findings she found to contradict Dr. Hecht's opinion. Upon remand, the ALJ should elaborate on what findings, if any, by Dr. Inserra and Silverman contradict Dr. Hecht's opinion.

On remand, the ALJ should address the deficiencies noted above, and if necessary reconsider the weight afforded to Dr. Hecht's opinion as well as plaintiff's RFC determination.

### 4. The ALJ's Finding Concerning Plaintiff's Ankle

Plaintiff testified at the hearing that her ankle swells and she elevates her legs two to three times per day, about two hours at a time, including after walking a block. (Tr. 51-52.) In her decision, the ALJ found that there was "no medical support in the record for elevating [plaintiff's] ankle two hours per day." (Tr. 23.) However, there appears to be medical evidence in the record concerning plaintiff's ankle that the ALJ failed to consider or acknowledge. For example, Dr. Inserra noted mild ROM restrictions to the left ankle as well as swelling of the ankle and diagnosed plaintiff with a left ankle sprain. (Tr. 379, 380, 382.) Dr. Silverman's treatment records nearly consistently noted a diagnosis of left ankle sprain or left ankle pain along with clinical findings of left ankle tenderness and restricted range of motion. (Tr. 254-74, 411-15, 397-402.) Dr. Hecht diagnosed plaintiff with derangement of the left ankle. (Tr. 423.) An MRI of the plaintiff's left

ankle from October 6, 2011, which the ALJ cites, shows "mild ankle joint effusion compatible with mild synovitis and/or FHL tendinopathy/tenosynovitis." (Tr. 18.) The MRI report also notes "strain/hypertrophic tear of the PTT at its navicular insertion" and "large complex approximately 10cc ganglion cyst associated with the peroneus tendons," in addition to the joint effusion and tendinopathy noted by the ALJ. (Tr. 236, 368.) Hospital records from July 20, 2011 indicate left ankle tenderness and a diagnosis of left ankle sprain. (Tr. 340-42.) Records from plaintiff's physical therapy show ankle swelling and antalgic gait. (Tr. 305-06.) These findings and records should have been addressed and considered in the ALJ's evaluation of the plaintiff's alleged ankle impairment.

On remand, the ALJ should address plaintiff's alleged ankle impairment and the record, and if necessary, reflect any additional limitations in the RFC.

### III. CONCLUSION

For the reasons set forth above, the Court GRANTS plaintiff's motion for judgment on the pleadings, DENIES Commissioner's motion for judgment on the pleadings and REMANDS for proceedings consistent with this opinion. On remand, the ALJ should develop the record by seeking a more detailed opinion from plaintiff's treating physician, Dr. Silverman. The ALJ should also make new findings concerning plaintiff's RFC that address the deficiencies identified above, and if necessary, reconsider plaintiff's RFC determination.

**SO ORDERED.**

Dated: August 1, 2018
Central Islip, New York

                                                                   /s/ JMA
                                            JOAN M. AZRACK
                                            UNITED STATES DISTRICT JUDGE